# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARKFORGED, INC. | ) |
| *Plaintiff*, | ) **Civil Action No.** 1:19-cv-11635 |
| v. | ) |
| DESKTOP METAL, INC., | ) **JURY TRIAL DEMANDED** |
| *Defendant.* | ) |

## COMPLAINT

Plaintiff Markforged, Inc. ("Markforged"), by and through its undersigned attorneys, Quinn Emanuel Urquhart & Sullivan LLP, for its Complaint against Defendant Desktop Metal, Inc. ("Desktop Metal"), hereby brings this action for breach of contract, and violations of the Lanham Act and unfair and deceptive acts and practices under Chapter 93A.

## NATURE OF THE ACTION

1.      In August, 2015, CEO Ric Fulop surreptitiously incorporated Desktop Metal behind Markforged's back while sitting as an active Director at Markforged. Fulop's actions in secretly starting a competitive company while still a Markforged Director were in flagrant breach of his fiduciary duties owed to Markforged. Since that time, Desktop Metal and Markforged have battled in the same market space, for the same investors, the same distributors, and the same customers. But Fulop and his cohorts are well aware that Desktop Metal's 3D printers are inferior to those of Markforged. Accordingly, knowing that Desktop Metal cannot fairly compete in the marketplace on the basis of product quality, Fulop and his colleagues have acted like proverbial schoolyard bullies, engaging in a persistent pattern of unfair and deceptive conduct, culminating

most recently in their dissemination of flagrant falsehoods about Markforged's 3D printers and products.

2.      Desktop Metal's actions also are in material breach of the parties' settlement agreement reached in October 2018, resolving Markforged's claims of breach of fiduciary duty and other bad acts against Fulop and Desktop Metal.  In that settlement, Fulop and Desktop Metal promised to stop disparaging Markforged and its products—a promise that they have steadfastly ignored starting even before the ink was dry on the Settlement Agreement.

3.      As alleged in Markforged's prior lawsuit, Fulop used his inside information as a Markforged Director to get the jump on Markforged and beat it to the financial marketplace, touting as unique the ideas he literally stole from Markforged for an affordable, efficient 3D printer that could print metal parts and fit on a desktop.  As a result of his treacherous and deceitful conduct, Fulop was able to raise millions of dollars from largely unsuspecting investors.  Then, as part of a plan to drive Markforged out of business, Fulop used a substantial portion of those funds to file a lawsuit against Markforged for patent infringement that he and his fellow executives at Desktop Metal knew had no merit, as a jury subsequently so found.

4.      Fulop's lawsuit against Markforged was an act of pure malevolence, filed as a ploy to drain Markforged's resources and destroy its reputation.  Indeed, Desktop Metal's bad faith plan to sue Markforged was concocted in the spring of 2017, nearly a year before filing the lawsuit— and well before the patents at issue had been granted to Desktop Metal, before anyone at Desktop Metal had even ever seen Markforged's supposedly infringing product, the Metal X System, and before the Metal X System had implemented the features Desktop Metal asserted infringed its patents.

5.      As a result of Desktop Metal's meritless lawsuit, Markforged was forced to expend substantial time and financial resources vindicating its rights.  On July 27, 2018, following a three-week trial, a jury returned a verdict in Markforged's favor, rejecting all of Desktop Metal's allegations of patent infringement.  (*See* Case No. 1:18-cv-10524-WGY, Dkt. 422 (Verdict Form) (answering "No" to every infringement claim and awarding Desktop Metal $0 in damages)).

6.      Markforged's victory on Desktop Metal's patent infringement allegations was widely reported in the media, and in September 2018, it was Desktop Metal's and Fulop's turn to stand trial on Markforged's counterclaims against them for their unfair and deceptive conduct, breaches of fiduciary duty, and trade secret misappropriation.  At the heart of Markforged's lawsuit was Fulop's duplicitous conduct in secretly starting Desktop Metal to compete with Markforged, using the inside information he had received and continued to receive as a Markforged Director.  After the parties did their opening statements and Markforged's CEO Greg Mark took the stand to testify on direct examination, and right before Fulop was scheduled to testify, Desktop Metal agreed to a settlement with important undertakings and consideration to Markforged.

7.      The parties signed a settlement agreement in October 2018 (the "Settlement Agreement").  The Settlement Agreement contains an express mutual non-disparagement clause—a clause that Markforged insisted on as an essential and inducing feature of the contract.  That Settlement Agreement expressly prohibits Desktop Metal from misrepresenting the functionality of Markforged's products, and assesses $100,000 in liquidated damages for each occurrence in violation of those terms.

8.      After signing the Settlement Agreement,  Desktop Metal  began a campaign of dirty tricks against Markforged that abrogated and repudiated essential terms of that Agreement, most notably by disseminating a whole bevy of knowingly false statements about Markforged's 3D

printers and products.  Desktop Metal has spread these disparaging comments about Markforged to resellers (including "VARs," a/k/a value added resellers), to distributors, to customers, and to potential customers—all in material breach of the parties' Settlement Agreement that was executed less than a year ago.

9.      Specifically, Desktop Metal prepared a so-called "battle card" for use by at least its VARs with customers and potential customers that contains a number of false and disparaging comments about Markforged's products.  Desktop Metal distributed this "battle card" to more than one hundred VARs across the world.

10.      Desktop Metal's false and misleading statements about Markforged and its products' functionality go well beyond the proverbial "rough and tumble" of market competition. Rather, Desktop Metal even went so far as to claim that Markforged's 3D printers and products are unsafe for an office environment and can start a fire because they use "flammable solvents" and Desktop Metal does not—a false statement as Fulop and his fellow bad actors at Desktop Metal well know.  To the contrary, Desktop Metal's own data sheet for the solvent used by Desktop Metal reports higher flammability/combustibility characteristics than the solvent used by Markforged.  Desktop Metal also falsely told <u>hundreds</u> of industry VARs, customers and potential customers and, on information and belief, investors, *inter alia*, that with Markforged's Metal X System "contamination [is] guaranteed," and that it "creates severe contamination risk" and further exposes users to toxic solvents and vapors.  (*See* <u>Exhibits A & B</u>, Desktop Metal's Marketing Materials).  Desktop Metal also spread the false information that Markforged's Metal X System requires $50,000 lab upgrades, including an expensive ventilation hood, when they knew it does not.

11.     When Markforged immediately brought the falsehoods about the Metal X System to Desktop Metal's attention, Desktop Metal's reaction was, of course, to lie, claiming that it never disseminated the marketing materials at all.  However, Markforged determined that Desktop Metal was prevaricating, and confronted Desktop Metal with the evidence.  Only then did Desktop Metal grudgingly admit that it had distributed the marketing materials to hundreds of VARs—the resellers who purchase equipment and resell to end users.  Desktop Metal then undertook unilaterally to "destroy" the copies of the marketing materials still in its possession, and disseminate new marketing materials that continued to contain a number of the same false statements about Markforged's 3D printers and products as before.

12.     The conduct of Fulop and his company Desktop Metal in misrepresenting and spreading falsehoods about the functionality of Markforged's products has been egregious.  By its acts and conduct, Desktop Metal breached the parties' Settlement Agreement, violated the Lanham Act, and engaged in unfair and deceptive conduct in the Commonwealth of Massachusetts that is in flagrant violation of Chapter 93A, which has and will continue to harm Markforged.

## PARTIES

13.     Plaintiff Markforged is a Delaware corporation, with its corporate headquarters and principal place of business in Watertown, Massachusetts.

14.     Defendant Desktop Metal is a Delaware corporation, with its principal place of business in Burlington, Massachusetts.

## JURISDICTION & VENUE

15.     This is an action brought by Markforged against Desktop Metal arising from Desktop Metal's flouting of the terms of the parties' Settlement Agreement and its dissemination of false and disparaging statements about Markforged's 3D Printers.  Specifically, this is an action

for breach of the Settlement Agreement or in the alternative, for rescission of the Settlement Agreement pursuant to Desktop Metal's material breach of such contract and for violations of Massachusetts General Law Chapter 93A § 11 and the Lanham Act.

16.     This Court has personal jurisdiction over Desktop Metal.  Desktop Metal maintains its principal place of business in Burlington, Massachusetts.  Furthermore, Desktop Metal transacts business in Massachusetts, has caused harm to Markforged in Massachusetts, has an interest in using or possessing real property in Massachusetts, and contracts to supply services or things in Massachusetts.  Moreover, pursuant to Section 9 of the Settlement Agreement, the parties agreed that the United States District Court for the District of Massachusetts shall retain jurisdiction of all disputes, controversies or claims arising under or relating to the Settlement Agreement, in whole or in part.

17.     Venue is appropriate for this action in the United States District Court for the District of Massachusetts.  A substantial part of the acts and conduct that constitute the claims complained of herein occurred in the Commonwealth, substantial harm was incurred by Plaintiff Markforged here, and Defendant Desktop Metal regularly transacted business in Massachusetts.  Moreover, pursuant to Section 9 of the Settlement Agreement, the parties agreed that venue is appropriate in this Court.

## FACTUAL ALLEGATIONS

### A.     Markforged's Founding and Development.

18.     Markforged was founded in 2013 by Greg Mark, based on his vision to develop an affordable 3D printer that could fit on a desktop and print strong parts out of an array of materials. Mr. Mark's "roadmap" of materials started with carbon and contemplated the ultimate introduction of 3D printing of metal parts on a desktop 3D printer—a revolutionary idea.

19.     In pursuit of his vision, Mr. Mark began working in his kitchen to create what was soon to become "Markforged"—the first part of the name coming from Mr. Mark himself, and the word "forged" indicating the creation of high-strength parts.

20.     As a Director of Markforged and confidante of Mr. Mark, Ric Fulop inculcated himself into the very bowels of Markforged's business and Greg Mark's vision—and then, as outlined below, stole them.

21.     In January 2014, Markforged introduced its revolutionary "Mark One" 3D printer to the market. The Mark One printer used a variety of high-strength materials to print strong parts at an accessible price point, marketed using the descriptive slogan:

> "*Parts as strong as **metal***
> *Printed at your **desktop**"*

22.     Following the introduction of the Mark One, Markforged continued to develop and refine its 3D printer platform, including hardware and software improvements, culminating in Markforged's  introduction in January 2017 of its newest 3D printer, named the "Metal X System." The Metal X System extended Markforged's product roadmap and fulfilled Mr. Mark's dream of creating an affordable, desktop-sized machine for printing fully functional 3D metal parts.

23.     Markforged has continued to innovate and extend its 3D printing platform with advances in cloud computing, cutting-edge materials science, and industrial design.  For example, Markforged recently introduced "Blacksmith," the first artificial-intelligence-powered software to integrate machine learning and additive manufacturing.  Blacksmith uses artificial intelligence, or "AI," to bring adaptive manufacturing to Markforged's printing platform, automatically adjusting programming to ensure every part is produced as designed.  Blacksmith's continuous feedback loop makes 3D printed parts more accurate, massively cuts waste, and accelerates time to market

by analyzing a design, comparing it to the scanned part, and automatically adapting the end-to-end process to produce perfectly "in-spec" parts.

24.     With each iteration of improvements to the Markforged 3D printing platform and development roadmap, Mr. Mark and his company Markforged have continued to push the boundaries of additive manufacturing, creating an end-to-end 3D printing system that rivals traditional manufacturing processes—and is actually superior in both speed and cost. Markforged's 3D printing platform incorporates ideas and development efforts that have been nominated for—and have won—numerous awards and accolades since 2013, including the following:

- 2018 New Equipment Digest Innovation Award

- 2018 Frost & Sullivan New Product Innovation Award

- 2018 Frost & Sullivan Manufacturing Leadership Award

- 2017 TCT Innovation Materials Award

- 2017 3DPrintingIndustry.com Enterprise 3D Printer of the Year

- 2018 3DPrintingIndustry.com Enterprise 3D Printer of the Year

**B.     Desktop Metal Is the Product of the Unfair and Deceitful Conduct of Its CEO and Founder, Ric Fulop.**

25.     Mr. Mark's vision caught the attention of an investor named Ric Fulop back in 2013, who was then a junior partner at a venture capital firm.  Fulop became a Director at Markforged during the period June 2013 through September 2015.  He also became a founding investor in Markforged through his investment firm.

26.     As one of only three members of the Markforged Board of Directors, Fulop was entrusted with unfettered access to Markforged's business and product plans and other confidential and propriety information.   Indeed, Fulop presented himself as a particularly interested and

inquisitive Director who continually solicited detailed information about Markforged's strategies, technologies, and plans for product development.  Mr. Mark and the other employees and Directors at Markforged trusted Fulop and fully shared with him the company's business and financial plans, as well as its strategies for product development, including its roadmap and plans to expand upon the business niche it had already entered and was continuing to develop.

27.     In his role as a Director, Fulop also received Markforged's Board presentation decks, which were replete with confidential and proprietary information, including customer lists, channel distributors, suppliers, business strategies, technical know-how, and plans and timing for soliciting additional funds from investors.

28.     Unbeknownst to Mr. Mark and anyone else at Markforged, at the same time that Fulop was privy to Markforged's confidential and proprietary information he was actively engaged in usurping Markforged's business opportunities to his own advantage.  Fulop's duplicity culminated in his incorporation of a new competitive enterprise named Desktop Metal on August 25, 2015—while he was still a Markforged Director.  Mr. Fulop stole Markforged's business roadmap for developing the next generation 3D metal printers, and diverted Markforged's opportunities for attracting new investors to himself and his new company.

29.     Specifically, Fulop jumped in front of Markforged both in terms of patent filings and soliciting the high-tech investor community for money to fund his new company.  As a Markforged Board member, Fulop obtained information relating to the timing, substance and identities of Markforged's next round of financing that was set to kick off in September 2015. Fulop then used that information for his own gain to seize the first mover advantage and secure key funding for Desktop Metal while still a Director at Markforged.

30. When word of Fulop's overtures to the investor community drifted back to Markforged, Mr. Mark confronted Fulop about the nature of his activities. Although Fulop was still a Director and owed Markforged the fiduciary duties of utmost good faith, care and loyalty, Fulop lied to Mr. Mark about his activities.

31. Things came to a head in mid-September, 2015, when Mr. Mark questioned Fulop about why Fulop was on the West Coast, and asked Fulop point blank whether he was there to meet with venture capital firms on behalf of another company. Fulop straight out lied, saying: "Greg, please don't be paranoid. I'm here for a Gridco meeting." In fact, Fulop was on the West Coast to get the first mover advantage over Markforged for his new company, Desktop Metal, by calling on the same venture capital firms that he knew Markforged intended to call on—and Fulop knew that because he had participated in Markforged's confidential Board discussions as a Markforged Director.

32. Markforged also subsequently learned that while Fulop was still a Markforged Director, he was actively misrepresenting Markforged to the investment community and to the market as a cheap, plastic 3D printing company, while promoting his new company, Desktop Metal, as offering high-strength 3D printers small enough to fit on engineers' desktops at an accessible price point—the very niche that Markforged has occupied since inception.

33. As a result of his misconduct, on or about September 30, 2015, Fulop was removed from Markforged's Board.

**C.    Desktop Metal Attempted to Put Markforged Out of Business by Filing A Meritless Lawsuit for Purported "Patent Infringement."**

34. But even after Fulop was removed from Markforged's Board, he (and his company Desktop Metal) continued to target Markforged in an attempt to drive Markforged out of business.

35.     In the spring of 2017, Fulop and Desktop Metal's top executives and Directors concocted a plan to bring a lawsuit against Markforged with the objective of draining Markforged of resources and damaging its reputation.  Desktop Metal's C-suite executives and Directors, including CEO Fulop, Chief Technology Officer Jonah Myerberg and Director Dayna Grayson, plotted to "take Markforged out" by suing them for purported "patent infringement"—all well before the patents at issue had been issued to Desktop Metal, before anyone at Desktop Metal had seen Markforged's Metal X System, and before the Metal X System had implemented the features Desktop Metal asserted infringed its patents.  But those small "details" did nothing to hinder Desktop Metal or Fulop from executing on their scheme against Markforged.

**D.     Desktop Metal's Ploy Didn't Work; a Massachusetts Jury Cleared Markforged of Any Wrongdoing or "Patent Infringement."**

36.     On March 19, 2018, Desktop Metal sued Markforged in this Court, claiming that Markforged's Metal X System platform infringed U.S. Patent Nos. 9,815,118 ("the '118 patent") and 9,833,839 ("the '839 patent") (collectively the "Desktop Metal Asserted Patents").  Desktop Metal lost, but not before furthering its plan to some degree of diverting Markforged's business and sales.

37.     Specifically, following a three-week jury trial in this Court, on July 27, 2018, a jury unanimously concluded that none of the asserted claims of the Desktop Metal Asserted Patents were infringed by any Markforged product.  Indeed, the Massachusetts jury rejected each and every one of Desktop Metal's allegations of patent infringement.  (*See* Case No. 1:18-cv-10524-WGY, Dkt. 422 (Verdict Form) (answering "No" to every infringement claim and awarding Desktop Metal $0 in damages)).

38.     Markforged's victory on Desktop Metal's patent infringement allegations was widely reported, and the media noted that Desktop Metal and Fulop would now stand trial on

Markforged's counterclaims against them for various breaches of fiduciary duty, misappropriation of trade secrets and violation of Chapter 93A in September 2018. (*See, e.g.*, Beau Jackson, 3D PRINTING INDUSTRY, July 30, 2018, "MARKFORGED CLEARED OF IP INFRINGEMENT, DESKTOP METAL AWAITS COUNTERSUIT" (*available at* https://3dprintingindustry.com/news/markforged-cleared-of-ip-infringement-desktop-metal-awaits-countersuit-137175/).

**E.      Markforged and Desktop Metal Entered Into a Settlement Agreement With Respect to All Outstanding Claims Between Them.**

39.      Markforged's counterclaims against Desktop Metal and Fulop proceeded to a jury trial in this Court on September 24, 2018.  After the parties did their opening statements and Mr. Mark testified on direct examination for three days—and with Ric Fulop next in line to take the stand—Desktop Metal agreed to a settlement.

40.      The parties signed the Settlement Agreement in October 2018, which includes a non-disparagement clause that prevents Desktop Metal from disparaging or misrepresenting the functionality of Markforged's products and assesses $100,000 in liquidated damages for each such violating occurrence.  Nonetheless, Desktop Metal has brazenly violated that provision and acted as if it is not even there.

**F.      Desktop Metal Has Gone on a Campaign to Disparage Markforged in the Market in Breach of the Parties' Settlement Agreement.**

41.      Notwithstanding the non-disparagement prohibitions in the Settlement Agreement, Desktop Metal has unleashed yet another scheme to kill Markforged—using dirty tricks against Markforged because of the inferiority of Desktop Metal's products.

42.      Desktop Metal's crusade against Markforged is centered around the very type of disparagement that is prohibited under the terms of the Settlement Agreement.  Desktop Metal is making false and misleading representations about Markforged and the Metal X System's

functionality to the market, to distributors, to resellers (including hundreds VARs), to customers and potential customers, and on information and belief to potential investors—all in violation of the parties' Settlement Agreement that was executed less than a year ago.

43.     Desktop Metal's misrepresentations and unfair and deceptive conduct go well beyond the rough and tumble world of market competition.  Desktop Metal is well aware that its 3D printers and products are inferior to Markforged's in virtually every conceivable way.  So Desktop Metal knowingly prepared and widely disseminated materially false information about Markforged and its products to hundreds of industry VARs and customers.  This includes false and misleading (and outrageous) representations about Markforged's Metal X System in comparison to Desktop Metal's Studio System, including that the Metal X System uses solvents that are "flammable" (and Desktop Metal's metal 3D printer is "not flammable"), "creates severe contamination risk" and "contamination [is] guaranteed," and exposes users to toxic solvents and vapors.  (See Exhibits A & B, Desktop Metal's Marketing Materials).

44.     So, for example, on Desktop Metal's published statements in its "battle card" that Markforged's Metal X System uses flammable solvents and the Desktop Metal printer does not, the actual facts are as follows:

–     The manufacturer of the solvent used by Markforged, Chemours, has stated in its technical data sheet, marketing materials, and safety data sheet, that its solvent is not flammable.  In its safety data sheet, Chemours also states that the solvent may be flammable but only if used under certain conditions.  Conversely, Desktop Metal's own solvent data sheet actually demonstrates conclusively that Desktop Metal's solvent has a higher risk of combustion due to its wider range of combustion limits.  Desktop Metal falsely and misleadingly claimed that its own

solvent is better (*i.e.*, not flammable), when in reality the flammability is greater, and the risk of combustion is worse for Desktop Metal's solvent than for the Markforged solvent.  Desktop Metal has knowingly and falsely represented to the world that the Markforged printing materials can catch on fire while its own printing materials cannot—a demonstrably false assertion that Fulop and his cohorts at Desktop Metal are well aware is simply not true.

45.    Similarly, Desktop Metal published statements asserting that installation of a ventilation hood is required in order to use the furnace with Markforged's products, a feature that Desktop Metal called out as a "Special Facilities Require[ment]" costing in the range of an additional $50,000.

–    However, as Desktop Metal well knows, its statements are completely false.  No $50,000 ventilation hood is required with Markforged's furnace; rather, Markforged's furnace uses a simple, inexpensive exhaust and ventilation system, as convenient and inexpensive as the exhaust ducts on a household dryer. Markforged's simple exhaust duct is clearly shown on multiple photos posted on Markforged's Twitter account—and Fulop is a Twitter follower.  Further, on information and belief, Desktop Metal even procured a Markforged furnace, and therefore became intimately familiar with the fact that no $50,000 ventilation hood is required.  Nevertheless, Desktop Metal made and widely disseminated this false and misleading statement to make customers and potential customers believe they had to expend an additional $50,000 to use the Markforged products—a totally false statement, as Desktop Metal was fully aware.

46.     Desktop Metal's false and misleading representations are targeted at key product attributes/functions of Markforged's Metal X System, including:

| Desktop Metal False Statement | Correction |
|---|---|
| Desktop Metal uses non-flammable solvents while Markforged uses "Flammable solvents." § 1. | The Markforged solvent is not flammable for its application, as set forth in the data sheet from the manufacturer, and Desktop Metal's solvent is more flammable than Markforged's. |
| "Ventilation hood required," "gas hood required," "~$50k lab upgrades required" for, inter alia, "fume hood installation" § 1. | Markforged products do not require a special and expensive "hood" – they are designed to work with standard 4" and 6" exhaust ducts, like a household dryer. |
| "Fixed printhead and no high resolution option." § 2. | The print head is not "fixed". A high-resolution, 50 µm layer printing option is available to Markforged customers. |
| "Contamination Guaranteed" § 2. | There is not contamination guaranteed, as reflected in several published third party test lab reports that Desktop Metal has full access to on the internet. |
| "MF Sinter 1 Furnace only has a single zone for temperature control." § 5. | The Markforged furnace has multiple zones of control. |
| The Markforged "ceramic retort (low thermal conductivity) yields low temperature uniformity requiring very large amounts of gas (20X more) to homogenize temperature." § 5. | Markforged does not use ceramic retort, and Markforged does not use large amounts of gas (20X more) to homogenize temperature. |
| "MF ceramic layer requires metal to metal tacking to get around DM IP leading to more involved post processing and no mold lock prevention capabilities." § 6. | This statement inaccurately contends that Markforged's tacking was designed specifically to avoid infringement of DM IP. It also is inaccurate to describe MF's post processing as "more involved." |
| "Sinter-1 consumes 15,000L of gas per run." "Requires house gas." § 9. | The Sinter-1 consumes substantially less gas per run.  House gas is not required. |
| "Thin brittle powder loaded filament contains less metal powder by volume." § 10. | Markforged filaments have the same powder loading as MIM feedstock material; Desktop Metal advertises that it uses "MIM materials." |
| "1300°C yields 94% dense for many steels." § 10. | Markforged achieves over 94% density for all of its metals. |

47.     When Markforged brought the falsehoods about the Metal X System to Desktop Metal's attention, Desktop Metal's reaction was to lie, claiming that it purportedly never disseminated the marketing materials at all.  (*See* <u>Exhibit C</u>, Markforged Ltrs. to Desktop Metal (May 15, 2019); Desktop Metal Ltr. to Markforged (May 23, 2019 & May 31, 2019)).

48.     When Markforged pressed the issue and confronted Desktop Metal with evidence of its lies, Desktop Metal grudgingly admitted that it had distributed the marketing materials about Markforged's products to <u>hundreds</u> of VARs.  It now turns out that, in its own words, Desktop Metal "destroyed" the evidence, shredding copies of the false marketing materials in its possession and asked its VARs to do the same.  (*See* <u>Exhibit C</u>, Markforged Ltr. to Desktop Metal (May 28, 2019 & June 6, 2019); Desktop Metal Ltr. to Markforged (May 31, 2019 & June 12, 2019)).

49.     However, simultaneously with its request to its VARs to destroy the original marketing materials, Desktop Metal distributed "updated" marketing materials to the same hundreds of VARs and customers and potential customers, which also knowingly or recklessly continued to misrepresent the functionality of Markforged's products, and specifically made disparaging and false statements about the functionality of Markforged's Metal X System, including:

| Index | Section | Desktop Metal False Statement | Correction |
|---|---|---|---|
| 1 | 1 | "Ventilation hood required for both debinding and sintering." | Markforged's products do not require a ventilation hood for debinding and sintering. |
| 2 | 1 | "Lab upgrades may be required for gas panel and fume hood installation." | Lab upgrades and a fume hood are not required. |
| 3 | 1 | "Consumes more gas leading to increased cost." | On a per-run basis, the gas consumed by the Markforged product is less expensive than for the Desktop Metal system. |

| 4 | 3 | "Small parts (max part ~2.5" x 2.6" x 9") only." | Substantially larger parts can be sintered in Markforged's smallest furnace, the Sinter 1, and much larger parts can be sintered in Markforged's Sinter 2. |
|---|---|---|---|
| 5 | 3 | "Small ~64 cu in workload volume." | Sinter 2, the more comparable product, has a 1,198 cubic inch work volume.  Sinter 1 has a ~200-290 cubic inch workload volume. |
| 6 | 3 | "One layer of parts." | Parts can be stacked on trays in more than one layer.  There is no "one layer" limitation. |
| 7 | 4 | "One MF furnaces *[sic]* per printer." | The output of multiple Markforged printers can be run through one furnace. |
| 8 | 4 | "5 printer MF install is ~$750k." | A 5-printer Markforged install is much lower than ~$750k, by at least $200k. |
| 9 | 5 | "Temperature uniformity difficult in ceramic tubes." | It is not difficult to achieve temperature uniformity in a Markforged furnace, using Markforged control software. |
| 10 | 5 | "Higher gas flow needed to homogenize temperature." | This is not true for Markforged furnaces. |
| 11 | 6 | "No automated control of debind and sinter process, open loop process may result in human error." | Software provides automatic control of the debind and sinter process.  The processes are not open loop. |
| 12 | 7 | "Manual drying and manual weighing. Parts handled wet." | Parts are automatically dried in the drying chamber; there is no "manual drying."  Parts are not handled wet. |
| 13 | 7 | "Safety equipment and hood required for tank cleaning." | Hood is not required for tank cleaning. |
| 14 | 7 | "Wash-1 exposes user to solvent and vapors." | Markforged is not aware of any exposure issues; the fluid is contained in the wash station. Markforged's system has been lab tested and safety certified in multiple countries. |
| 15 | 9 | "Consumes more gas and has no vacuum." | Sinter 1 consumes less gas, by cost, than the Desktop Metal system. |
| 16 | 10 | "1300°C may not allow for the same materials to be sintered." | The Markforged product can sinter all the material types that Desktop Metal offers.  Markforged can also sinter titanium, which Desktop Metal does not offer. |

(*See* Exhibit C, Markforged Ltr. to Desktop Metal (July 24, 2019)).

50.     Each of these false statements attributed by Desktop Metal to Markforged's Metal X System is knowingly false, misleading and disparaging.  And these false statements are not part of the rough and tumble world of competition between competitors; to the contrary, Desktop Metal has unleashed a targeted, deceitful campaign against Markforged and its product line to "take out" Markforged once and for all.

51.     Each false statement by Desktop Metal about the Metal X System and each dissemination of the marketing materials to each VAR, customer and potential customer, and others constitutes a breach of the Settlement Agreement, in the amount of $100,000 per occurrence.

## COUNT I
### Breach of Contract

52.     The allegations contained in the above Paragraphs 1 through 51 are hereby incorporated by reference as if fully set forth herein.

53.     Plaintiff Markforged has substantially performed all its obligations under the Settlement Agreement with Defendant Desktop Metal.

54.     Defendant Desktop Metal has materially breached its obligations under the Settlement Agreement by making, providing, distributing and disseminating knowingly false and misleading statements and misrepresentations about Markforged and the functionality of Markforged's products, including the Metal X System.

55.     Desktop Metal and its representatives and agents have made and continue to misrepresent and make false and misleading statements to the market, resellers, VARs and customers and potential customers about the nature, characteristics, functions and quality of Markforged's products.

56.     Each knowingly false and misleading statement and misrepresentation by Desktop Metal about Markforged and its products constitutes a separate occurrence that materially breaches

the parties' Settlement Agreement.  Each communication, distribution or dissemination of each false and misleading statement by Desktop Metal about Markforged and its products also constitutes a separate occurrence that materially breaches the parties' Settlement Agreement.

57.   As a direct and proximate result of Desktop Metal's breaches of the Settlement Agreement, Markforged has suffered damages, including but not limited to, damage to Markforged in the marketplace, including lost business, lost opportunity, and loss of goodwill and reputation, in the amount of at least $100,000 per occurrence.

<u>**COUNT II**</u>
*Breach of the Implied Covenant of Good Faith and Fair Dealing*

58.   The allegations contained in the above Paragraphs 1 through 57 are hereby incorporated by reference as if fully set forth herein.

59.   In addition to the express contractual provisions set forth hereinabove, there is an implied covenant that the parties shall act in good faith, deal fairly with one another and not undertake efforts that would deprive the other of the benefits of the Settlement Agreement.

60.   Plaintiff Markforged has at all material times acted in good faith and dealt fairly with Defendant Desktop Metal in connection with the rights, responsibilities and obligations under the Settlement Agreement.

61.   In contrast, Defendant Desktop Metal has failed to act in good faith and to fairly deal with Plaintiff Markforged.  To the contrary, as a result of Desktop Metal's bad faith conduct and unfair dealing, Desktop Metal has deprived Markforged of the benefits it was entitled to receive under the Settlement Agreement.

62.   As a direct and proximate result of Desktop Metal's breaches of the implied covenant of good faith and fair dealing, Markforged has suffered damages, including but not

limited to, damage to Markforged in the marketplace, including lost business, lost opportunity, and loss of goodwill and reputation, in the amount of at least $100,000 per occurrence.

**COUNT III**
*Unfair Business Methods – M.G.L. c. 93A  § 11*

63.     The allegations contained in the above Paragraphs 1 through 62 are hereby incorporated by reference as if fully set forth herein.

64.     At all times relevant to this action, Plaintiff Markforged and Defendant Desktop Metal have been engaged in trade or commerce within Massachusetts within the meaning of M.G.L. c. 93A, § 11.

65.     As alleged above, Defendant Desktop Metal engaged in a course of unfair and deceptive acts and conduct designed to harm Plaintiff Markforged, to Defendant Desktop Metal's advantage.   Desktop Metal engaged in this unfair and deceptive conduct primarily and substantially within Massachusetts—by preparing false and misleading statements about Markforged and its products within the Commonwealth; by making misrepresentations and omissions that reached business actors and prospective clients in Massachusetts; by causing harm to Markforged, which was felt in the Commonwealth; and by otherwise engaging in trade and commerce within the Commonwealth, to the detriment of those within Massachusetts.

66.     The unfair and deceptive acts and practices of Defendant Desktop Metal materially harmed Markforged in the Commonwealth by, at a minimum, causing damage to Markforged in the marketplace, including lost business, lost opportunity, and loss of goodwill and reputation.

67.     The acts and practices of Defendant Desktop Metal alleged herein constitute unfair methods of competition or unfair or deceptive acts and practices and business transactions that occurred primarily and substantially in Massachusetts within the meaning of M.G.L. c. 93A § 2.

68.     Desktop Metal's unfair and deceptive acts and practices have caused and will continue to cause harm to Markforged in the marketplace, including lost business, lost opportunities, and loss of goodwill and reputation.  Accordingly, as a result of Defendant Desktop Metal's unfair and deceptive conduct, Plaintiff Markforged has suffered damages.

69.     These unfair methods of competition or unfair or deceptive acts or practices were intentional, willful, and knowing, and subject to treble damages.

### COUNT IV
*Lanham Act, False Advertising – 15 U.S.C.  § 1125(a)*

70.     The allegations contained in the above Paragraphs 1 through 69 are hereby incorporated by reference as if fully set forth herein.

71.     Desktop Metal and its representatives and agents made false and misleading statements, including but not limited to, communications and written marketing and promotional materials to the market, resellers, VARs and customers and potential customers and, on information and belief, investors and potential investors about the nature, characteristics, functions and quality of Markforged's products.  These false and misleading statements also misleadingly compare the performance and functionality of Markforged's and Desktop Metal's products, including the Metal X System and Desktop Metal's Studio System.

72.     Desktop Metal's statements about Markforged's products are false and/or misleading commercial speech in violation of the Lanham Act, 15 U.S.C. § 1125(a).

73.     Desktop Metal's false and misleading statements were made in interstate commerce, and in the context of commercial advertising or promotion, as they were made for the purpose of, among other things, influencing the market, resellers, VARs and customers and potential customers, as well as to harm Markforged's reputation and business prospects in the marketplace.

74.     Desktop Metal made these false and misleading statements knowingly and willfully or recklessly.

75.     Desktop Metal's false and misleading statements and comparisons of Desktop Metal's products and Markforged's products are commercial advertising and promotion under the Lanham Act.  Desktop Metal's "battle card" comparisons, meant to influence consumers and potential consumers for the companies' competing offerings, are commercial speech made with the intent to influence potential consumers who might purchase either Desktop Metal's products or Markforged's products.  The statements were systematically disseminated to the consuming public in a manner that constitutes advertising and/or promotion under the statute.  Desktop Metal prepared its "battle cards" for distribution to potential purchasers of metal 3D printers generally, and broadly disseminated the "battle card" comparisons to hundreds of potential purchasers— including systematic distribution to hundreds of VARs, in a coordinated effort to reach each VAR's potential customers.

76.     Desktop Metal's false and misleading statements have and will continue to deceive the market, resellers, VARs and customers and potential customers in connection with Markforged's products, including their performance and functionality.

77.     Desktop Metal's false and misleading statements are material and have affected, and will continue to affect, the purchasing and investment decisions in the market, and have caused and will continue to cause harm to Markforged in the marketplace, including lost business, lost opportunities, and loss of goodwill and reputation.  Markforged is entitled to all relief available for such false and misleading statements, including but not limited to injunctive relief, disgorgement of Desktop Metal's ill-gotten profits, and recovery of Markforged's damages, attorneys' fees, costs and treble damages.  (*See* U.S.C. § 1117(a)).

**COUNT V**
*Injunctive Relief – M.G.L. c. 214 § 1*

78.    The allegations contained in the above Paragraphs 1 through 77 are hereby incorporated by reference as if fully set forth herein.

79.    Desktop Metal's false and misleading statements and the dissemination of such false and misleading statements about Markforged and its products to the market, resellers, VARs and customers and potential customers is in material breach of the Settlement Agreement.

80.    Markforged respectfully requests that the Court enter an injunction (i) enjoining Desktop Metal and its representatives and agents from making false and misleading statements about Markforged and its products to the market, resellers, VARs and customers and potential customers, as well as the general public; (ii) enjoining Desktop Metal and its representatives and agents from sending, providing, communicating (whether orally or in writing), distributing or disseminating any false and misleading statements about Markforged and its products; and (iii) enjoining Desktop Metal and its representatives and agents from further "destroying" or deleting materials that are at issue in this action.

**COUNT VI**
*Declaratory Judgment*

81.    The allegations contained in the above Paragraphs 1 through 80 are hereby incorporated by reference as if fully set forth herein.

82.    The Settlement Agreement includes prohibitions against Desktop Metal making false and misleading statements about Markforged and its products.  The Settlement Agreement also assesses $100,000 in liquidated damages for each such violating occurrence.

83.     As set forth above, Desktop Metal has failed to perform its obligations under the Settlement Agreement, and is in material breach of the Settlement Agreement, as well as the implied covenant of good faith and fair dealing.

84.     Markforged respectfully seeks a declaration from this Court that <u>each</u> communication, distribution or dissemination of each false and misleading statement by Desktop Metal about Markforged and its products constitutes a separate occurrence in breach of the parties' Settlement Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Markforged respectfully requests that this Court:

A.     Enter judgment for Plaintiff Markforged on Count I of this Complaint for breach of contract, or in the alternative, at Markforged's sole election, rescind the parties' Settlement Agreement as a result of Desktop Metal's abrogation and repudiation of an essential and inducing element of the contract;

B.     Enter judgment for Plaintiff Markforged on Counts II through VI of this Complaint;

C.     An award of compensatory damages in favor of Plaintiff Markforged and against Defendant Desktop Metal for all damages sustained by Plaintiff Markforged as a result of Defendant Desktop Metal's wrongdoing, in an amount to be proven at trial, including interest thereon;

D.     An award of three times Plaintiff Markforged's actual damages for Defendant Desktop Metal's unfair trade practices and deceptive conduct;

E.     An injunction and an award of three times Plaintiff Markforged's actual damages for Defendant Desktop Metal's violations of the Lanham Act;

F.     An award of punitive damages to Plaintiff Markforged;

G.      An award of litigation costs and expenses, including reasonable attorneys' fees and expert fees to Plaintiff Markforged;

H.      An award of pre-judgment and post-judgment interest;

I.      Enter a permanent injunction against Defendant Desktop Metal and its executives, officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them from engaging in any further unlawful practices, policies, customs, and usages set forth herein;

J.      Declare that each communication, distribution or dissemination of each false and misleading statement by Desktop Metal about Markforged and its products constitutes a separate occurrence in breach of the parties' Settlement Agreement; and

K.      Award such other and further relief as this Court deems just and proper

## JURY TRIAL DEMANDED

Plaintiff Markforged demands a trial by jury of all issues so triable.

Dated:  July 30, 2019                                    /s/  *Harvey J. Wolkoff*
                                                        Harvey J. Wolkoff (BBO# 532880)
                                                        Patrick D. Curran (BBO# 568701)
                                                        Aliki Sofis (BBO# 675777)
                                                        QUINN EMANUEL URQUHART &
                                                        SULLIVAN, LLP
                                                        111 Huntington Avenue, Suite 520
                                                        Boston, MA 02199
                                                        Tel: (617) 712-7100
                                                        harveywolkoff@quinnemanuel.com
                                                        patrickcurran@quinnemanul.com
                                                        alikisofis@quinnemanuel.com

                                                        Steven Cherny (*pro hac vice forthcoming*)
                                                        Edward DeFranco (*pro hac vice forthcoming*)
                                                        QUINN EMANUEL URQUHART &
                                                        SULLIVAN, LLP
                                                        51 Madison Avenue, 22nd Floor
                                                        New York, NY 10010
                                                        Tel: (212) 849-7000
                                                        stevencherny@quinnemanuel.com
                                                        edwarddefranco@quinnemanul.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 30th day of July, 2019.

/s/ *Aliki Sofis*
Aliki Sofis